UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD WOLF,

    Plaintiff,

    v.

CITY OF MILLBRAE, et al.,

    Defendants.

Case No. 21-cv-00967-PJH

**ORDER RE: DEFENDANTS' MOTIONS TO DISMISS**

Re: Dkt. Nos. 71, 72, and 73

Defendants' three motions to dismiss came on for hearing before this court on July 29, 2021. Plaintiff Richard Wolf appeared through his counsel, Andrew Campanelli and Samuele Riva. Defendant City of Millbrae ("City") appeared through its counsel, Kurt Franklin. Defendant T-Mobile USA, Inc. ("T-Mobile") appeared through its counsel, Daniel Ridlon and Sunita Bali. Defendants Millbrae Heights Homeowners Association ("HOA"), Tony Deblauwe, Daniel Louie, Voltaire Warda, Yuri Regelman, and Alan Marshall ("individual defendants")[1] all appeared through their counsel, Kristen Iversen. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**I.   BACKGROUND**

    **A.   Narrative**

In 2000, Wolf purchased a condominium unit located at Millbrae Heights, 320 Vallejo Drive, unit #41, Millbrae, CA 94030 (the "residence"). FAC ¶ 37. T-Mobile, a

---

[1] The individual defendants are all members of the Millbrae Heights Homeowners' Association Board.

telecommunications provider, installed a cell site (the "cell site") on the Millbrae Heights roof in 2010 pursuant to a lease negotiated with the HOA and a use permit granted by the City. FAC ¶ 37. Wolf approved the installation based on the information available at the time, which did not include the exact location of the cell site—six feet above his residence. FAC ¶¶ 37, 39.

Wolf alleges he suffers from "electromagnetic hypersensitivity" ("EHS"), which causes him to be physically and neurologically affected by radiofrequency ("RF") emissions from cell phone equipment, resulting in a range of symptoms including insomnia, tiredness, fatigue, loss of energy, dizziness, difficulty concentrating, dry mouth, dry eyes, headaches, and weight gain. FAC ¶ 36. Wolf was diagnosed with EHS on September 1, 2020, and this EHS diagnosis is confirmed by his physician, Dr. Tiffany Baer. FAC Ex. A (Dkt. 28-1). Wolf alleges that his symptoms, caused by the cell site's RF emissions, have grown worse over the past 10 years as the cell site's power has been "amped up." FAC ¶¶ 40-41.

Wolf reports that during the COVID-19 pandemic his "mental and physical wellbeing got severely worse" due to months of uninterrupted exposure to RF emissions. FAC ¶ 43. He moved out of the residence into temporary quarters on September 24, 2020, as a result of his severe symptoms. FAC ¶ 48. Wolf's physical and mental condition started to improve after he left the residence. FAC ¶ 51; Ex. D (Dkt. 28-4).

**B.     Radiofrequency Emissions**

On July 30, 2020, plaintiff's hired electromagnetics expert, Monika Krajewska, evaluated the residence and found that "radiofrequency fields (RF) dramatically exceeded Building Biology precautionary levels in all rooms . . . 2,500 higher than Building Biology Extreme Radiation levels were found in the living room and master bedroom, directly under the cell tower mounted on the rooftop above the unit." FAC ¶ 44 (citing Ex. A [Dkt. 28-1] at 11).

A second electromagnetics evaluation, conducted by expert Stephanie Kerst, found the radiofrequency exposure data to exceed the Building Biology institute's

precautionary guidelines by some 1300 times.  FAC Ex. E (Dkt. 28-5) at 9.

The FCC sets maximum RF exposure standards, establishing limits on the amount of radiation that can be emitted from cell towers and other wireless transmitters.  Plaintiff does not allege that the RF emissions at issue here exceed the FCC's limits.

### C. Reasonable Accommodation Requests

On July 27, 2018, plaintiff's agent "informed the HOA of the dangers of T-Mobile's cell tower."  FAC ¶ 42.  The HOA took no action.  FAC ¶ 42.

On November 16, 2020, plaintiff's counsel sent a letter to counsel for the HOA requesting a reasonable accommodation for the HOA to have the cell site turned off.  FAC Ex. B (Dkt. 28-2) at 2-7.  This letter references additional correspondence between the parties, including a November 5 conversation and an email sent October 19.  FAC Ex. B (Dkt. 28-2) at 2.

On November 20, 2020, plaintiff's counsel sent a letter to the President and CEO of T-Mobile requesting a reasonable accommodation for T-Mobile to remove and relocate the cell site.  FAC Ex. B (Dkt. 28-2) at 8-9.

On December 24, 2020, plaintiff's counsel sent a letter to the Millbrae City Attorney requesting a reasonable accommodation based on his ongoing symptoms.  FAC Ex. C (Dkt. 28-3).  Specifically, counsel requests that the City "halt T-Mobile from operating its cell tower above the Residence until the City determines (1) whether Mr. Wolf is entitled to a reasonable accommodation under the ADA and FHAA and, if so, (2) what that reasonable accommodation should be."  Dkt. 28-3 at 4 (emphasis omitted).

### D. Procedural History

The original complaint was filed February 8, 2021.  Dkt. 1.   Wolf filed the now-operative first amended complaint ("FAC") on March 2, 2021.  Dkt. 28.  T-Mobile sought relief from this District's General Order 56 regarding special procedures for ADA actions, and this court granted the exemption on April 6, 2021.  Dkt. 42.  Defendants filed the three motions to dismiss now at issue on May 6, 2021.

## II. DISCUSSION

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

### B. City's Motion

In the FAC, plaintiff advances the following claims against the City: (1) violation of the Americans with Disabilities Act ("ADA"), Title II; (3) violation of the Federal Fair Housing Act ("FHA"); (4) violation of California's Fair Employment and Housing Act ("FEHA"); (5) violation of plaintiff's fundamental rights to self-defense, safety, personal

security, and bodily integrity – 42 U.S.C. § 1983; California Constitution, Art. I, § 1; and (6) declaratory judgment based on Fifth Amendment violations (as applied constitutional challenge) – 42 U.S.C. § 1983, in the alternative to counts one through four [takings]. Within the opposition to the City's motion, plaintiff voluntarily dismisses the claim for (5) violation of plaintiff's fundamental rights to self-defense, safety, personal security, and bodily integrity – 42 U.S.C. § 1983; California Constitution, Art. I, § 1.  Dkt. 82 at 9 n.1.

### 1.     *Claim 1 – ADA, Title II*

"Title II of the ADA prohibits public entities from both discriminating against qualified individuals because of a disability and excluding such individuals from benefitting from or participating in a public program because of their disability." Razon v. Cty. of Santa Clara, No. 17-CV-00869-LHK, 2018 WL 405010, at *9 (N.D. Cal. Jan. 12, 2018) (citing 42 U.S.C. § 12132).  "To prove that a public program or service violated Title II of the ADA, [plaintiff] must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Updike v. Multnomah Cty., 870 F.3d 939, 949 (9th Cir. 2017).  In short, "[a] public entity may be liable for damages under Title II of the ADA . . . if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons.  The failure to provide reasonable accommodation can constitute discrimination." Id. at 951 (internal citations omitted).

Importantly, the ADA does not require an accommodation that an individual requests or prefers; instead, the ADA requires only a reasonable accommodation.  See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002); see also Townsend v. Quasim, 328 F.3d 511, 518 (9th Cir. 2003) ("As the regulatory language makes clear, entities are required only to make reasonable changes in existing policies in order to accommodate individuals' disabilities." (emphasis omitted)).  "Because the issue of reasonableness depends on the individual circumstances of each case, this

5

determination requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations" sought. Wong v. Regents of Univ. of Cal., 192 F.3d 807, 818 (9th Cir. 1999). In the context of requests for accommodation in employment under Title I of the ADA, the Ninth Circuit has held (along with at least eight other courts of appeals) that a requested accommodation "that would compel an employer to violate" seniority rights under a collective bargaining agreement is per se unreasonable. Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 681 (9th Cir. 2001). It would be improper to subject a defendant to the threat of litigation for the purpose of accommodating a plaintiff under the ADA. Id. at 681-82.

Here, the City argues at length that EHS is not a "qualifying disability" to support a reasonable accommodation request under the ADA. The court finds it inappropriate at the pleading stage to assess the validity of plaintiff's disability; rather, it accepts as true the facts regarding plaintiff's medical condition and symptoms as alleged in the complaint. This claim fails on separate grounds.

Wolf charges that the City discriminated against him based on denial of a reasonable accommodation request. However, Wolf's claim fails because his request for accommodation was unreasonable—it would require the City to violate federal law. Pursuant to the Telecommunications Act of 1996 ("TCA") and the National Environmental Protection Act, the Federal Communications Commission ("FCC") sets maximum RF exposure standards, establishing limits on the amount of radiation that can be emitted from cell towers and other wireless transmitters. City of Portland v. United States, 969 F.3d 1020, 1046 (9th Cir. 2020). The TCA precludes local regulation of "the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions" where the facility complies with the FCC's RF exposure regulations. 47 U.S.C. § 332(c)(7)(B)(iv). "Environmental effects" include biological and human health effects. See, e.g., Colfaxnet LLC v. City of Colfax, 2020 WL 6544494, at *7 (E.D. Cal. Nov. 6, 2020) (citing Freeman v. Burlington Broadcasters, Inc., 204 F.3d 311, 325 (2d. Cir. 2000); Cellular Tel. Co. v. Town of Oyster

Bay, 166 F.3d 490, 494 n.3 (2d Cir. 1999).

Wolf's requested accommodation is per se unreasonable. His accommodation request to the City seeks either (1) prohibiting T-Mobile from operating the cell site at its current location or (2) applying RF exposure standards that differ from the standards set by the FCC. The City's grant of either accommodation would violate the TCA's protection against local regulation of "the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions" where the facility complies with the FCC's RF exposure regulations. 47 U.S.C. § 332(c)(7)(B)(iv). The court does not reach the issue of whether the TCA specifically precludes the ADA and FHA claims because it is unnecessary—there is no violation of disability protections where there is no denial of a reasonable accommodation. Because Wolf seeks an accommodation that would require the City to violate the TCA, it is necessarily unreasonable. Therefore, plaintiff's claim against the City for violation of Title II of the ADA is dismissed.

### 2. *Claims 3 & 4 – Federal Fair Housing Act & California Fair Employment and Housing Act*

Under the FHA, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter." 42 U.S.C. § 3604(f)(1). "[P]rohibited discrimination encompasses 'a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.'" Giebeler v. M & B Assocs., 343 F.3d 1143, 1146-47 (9th Cir. 2003) (quoting 42 U.S.C. § 3604(f)(3)(B)). An accommodation is reasonable where it would not require a fundamental alteration in the nature of the housing provider's business or impose on the housing provider an undue financial or administrative hardship. Id. at 1157. The analysis of reasonable accommodations under the FHA follows the same authority and analysis as the ADA—"there is no significant difference in the analysis or rights and obligations created by the two Acts." Giebeler, 343 F.3d at

1149 (quoting <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1152 n.7 (9th Cir.2002)).  And since "FEHA's protections are by definition at least as great as those under the FHA, failure to accommodate which violates the FHA also violates the FEHA."  <u>Montano v. Bonnie Brae Convalescent Hosp., Inc.</u>, 79 F.Supp.3d 1120, 1129 (C.D. Cal. 2015) (citation omitted); <u>see also</u> <u>Jimenez v. Tsai</u>, No. 5:16-CV-04434-EJD, 2017 WL 2423186, at *5 (N.D. Cal. June 5, 2017).

     Here, for the same reasons that plaintiff's Title II claim for denial of reasonable accommodation falls short, plaintiff's FHA and FEHA claims against the City also fail.  Granting plaintiff's accommodation request would require the City to regulate RF emissions in violation of the TCA and its implementing regulations.  This accommodation would require the City to face liability for violating federal law and is thus not reasonable.  Plaintiff fails to state a claim for denial of a reasonable accommodation where the accommodation requested is unreasonable.

     To the extent plaintiff's claim for denial of reasonable accommodation is premised solely on failure to engage in an interactive process, such a claim cannot stand on its own.  <u>Howard v. HMK Holdings, LLC</u>, 988 F.3d 1185, 1193-94 (9th Cir. 2021).  Because the request was not reasonable and cannot support a claim for disability discrimination, the court does not reach the parties' arguments regarding the TCA's preemption of the FEHA claim or the applicability of California's Tort Claims Act to the FEHA claim.  Plaintiff's claims against the City for violations of the FHA and FEHA are dismissed.

     ***3.    Claim 6 – Declaratory judgment based on Fifth Amendment violations (as applied constitutional challenge) – 42 U.S.C. § 1983, in the alternative to counts 1 through 4 [Takings]***

     The Takings Clause of the Fifth Amendment provides that "[n]or shall private property be taken for public use, without just compensation."  U.S. Const. amend. V.  A person who has suffered a taking at the hands of a local government may bring a claim in federal court under 42 U.S.C. § 1983 to obtain just compensation.  See <u>Knick v. Twp. of Scott</u>, 139 S. Ct. 2162, 2172 (2019); see also <u>Ballinger v. City of Oakland</u>, 398 F. Supp.

3d 560, 567 (N.D. Cal. 2019) (Gilliam, J.).

Our precedent establishes two distinct types of takings: physical takings and regulatory takings. See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 321 (2002). For physical takings, the Fifth Amendment's "plain language requires the payment of compensation whenever the government acquires private property for a public purpose, whether the acquisition is the result of a condemnation proceeding or a physical appropriation." Id. "[T]otal regulatory takings," where the government "seeks to sustain regulation that deprives land of all economically beneficial use," follow the same course of analysis. Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1026-27 (1992).

On the other hand, the Fifth Amendment "contains no comparable reference to regulations that prohibit a property owner from making certain uses of her private property." Tahoe-Sierra, 535 U.S. at 321-22. Regulatory taking challenges thus require "essentially ad hoc, factual inquiries." Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978). The government must compensate for a regulatory taking "only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." Yee v. City of Escondido, 503 U.S. 519, 523 (1992); see also Pa. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922) ("The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.").

Here, Wolf fails to allege a takings claim against the City. The City cannot be liable for a physical taking where it does not own nor operate the cell site. The City did not place the cell site at Millbrae Heights, it does not own the cell site, and it does not operate the cell site. Because the City does not physically occupy Wolf's residence, the only path to establish a taking is under a theory of regulatory taking. But the City cannot be held liable for a regulatory taking where Wolf fails to point to one of its ordinances or regulations that frustrates Wolf's ownership of the residence. The City, without authority

to restrict RF emissions given the TCA and related FCC guidelines, is *prevented* from adopting any regulations that could even give rise to a taking in this context. Therefore, plaintiff's claim against the City for takings in violation of the Fifth Amendment is also dismissed.

### C. T-Mobile's Motion

In the FAC, plaintiff advances the following claims against T-Mobile: (1) violation of the ADA, Title II; (3) violation of the FHA; (4) violation of FEHA; (5) violation of plaintiff's fundamental rights to self-defense, safety, personal security, and bodily integrity – 42 U.S.C. § 1983; California Constitution, Art. I, § 1; (6) declaratory judgment based on Fifth Amendment violations (as applied constitutional challenge) – 42 U.S.C. § 1983, in the alternative to counts one through four [Takings]; (7) private nuisance; and (8) trespass. Within the opposition to T-Mobile's motion, plaintiff voluntarily dismisses the claims for (1) violation of the ADA, Title II; (6) declaratory judgment based on Fifth Amendment violations (as applied constitutional challenge) – 42 U.S.C. § 1983, in the alternative to counts 1 through 4 [Takings]; and (8) trespass. Dkt. 83 at 7 n.1.

#### 1. *Claims 3 and 4 – Federal Fair Housing Act and California Fair Employment and Housing Act*

Analysis of the fair housing claims asserted against T-Mobile does not follow the same path as the denial of reasonable accommodation against the City discussed above. A request for T-Mobile to relocate its cell site or regulate its own RF emissions does not implicate the same statutory violations that the City would face for attempting to regulate the RF emissions at issue. T-Mobile is free to regulate its own RF emissions under the FCC's guidelines. Thus, such a request is not unreasonable on its face. The fair housing claims alleged against T-Mobile are instead assessed for whether the telecommunications company is even a covered entity under the fair housing statutes.

The FHA bars discrimination "in the sale or rental" of a dwelling, "in the terms, conditions, or privileges of sale or rental of a dwelling," and "in the provision of services or facilities in connection with such dwelling." 42 U.S.C. § 3604(f)(1)-(2). The FHA

10

generally applies only to "landlords and public agencies," or businesses that provide services related to housing, such as mortgage companies, realtors, property management companies, title insurance companies, and other similar entities. See McGary v. City of Portland, 386 F.3d 1259, 1261 (9th Cir. 2004); Ojo v. Farmers Grp., Inc., 600 F.3d 1205, 1208 (9th Cir. 2010). As our circuit court recently affirmed, "the FHAA applies in cases involving a 'sale' or 'rental' of a dwelling to a buyer or tenant"—it does not apply to entities outside the provision of housing or housing-related services. Salisbury v. City of Santa Monica, 998 F.3d 852, 858 (9th Cir. 2021) (where an entity was not obligated to consider a housing-specific reasonable accommodation request from a person with whom it had no sale nor rental relationship).

Here, T-Mobile is not subject to the FHA because its actions do not involve the provision of housing-related services. T-Mobile provides telecommunications services to the public at large, and despite the proximity of its cell site to the residence, the company does not provide housing services at plaintiff's condominium complex. As in Salisbury, T-Mobile does not have any sale or rental relationship with Wolf, and it thus does not have an obligation to consider his reasonable accommodation request. Plaintiff's FEHA claim against T-Mobile fails for the same reasons as the FHA claim. Montano, 79 F.Supp.3d at 1129. Therefore, Wolf's FHA and FEHA claims against T-Mobile are dismissed.

### 2. Claim 5 – Fundamental rights to self-defense, safety, personal security, and bodily integrity – 42 U.S.C. § 1983

In relevant part, § 1983 provides that:

> Every person who, under color of any statute . . . of any State or Territory or the District of Columbia, subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S.

11

386, 393-94 (1989). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1138 (9th Cir. 2012); see also West v. Atkins, 487 U.S. 42, 48 (1988).

For the second prong, showing state action, "We start with the presumption that conduct by private actors is not state action" within the meaning of § 1983. Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011). Plaintiff bears the burden to plead and prove state action by a private defendant. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

> A private individual's action may be 'under color of state law' where there is 'significant' state involvement in the action. The Supreme Court has articulated four tests for determining whether a private [party's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test.

Franklin v. Fox, 312 F.3d 423, 444-45 (9th Cir. 2002) (internal citation omitted). The "government nexus" test, most strongly implicated by the parties here, asks whether (1) the private actor is "mostly comprised of state institutions;" (2) "state officials dominate decision making of the" private actor; (3) the private actor's "funds are largely generated by the state institutions;" and (4) the private actor "is acting in lieu of a traditional state actor." Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 955 (9th Cir. 2008).

Here, Wolf's claim for violation of the California Constitution, Article I, § 1, cannot advance as part of this § 1983 claim. State constitutional claims are not cognizable under § 1983 because they fail to satisfy the first element, i.e., that a right secured by the Constitution or laws of the United States was violated. See West v. Atkins, 487 U.S. 42, 48 (1988).

The § 1983 claim separately fails where Wolf fails to allege a deprivation of a cognizable right under the federal constitution. While Wolf alleges violation of his Due Process rights to individual self-defense, personal security, and bodily integrity, he offers

only vague analogies to Supreme Court precedent in completely inapplicable contexts. For instance, Wolf cites McDonald v. City of Chicago, Ill., 561 U.S. 742, 767 (2010), regarding the right to self-defense in the Second Amendment context. He cites Planned Parenthood of S.E. Penn. v. Casey, 505 U.S. 833, 849 (1992), for its consideration of bodily integrity in the context of abortion. These and the rest of the examples cited by Wolf are too attenuated to demonstrate the existence of a cognizable constitutional right in this case. There exists no Due Process right to be free from RF emissions. See, e.g., Povacz v. Penn. Pub. Util. Comm'n, 241 A.3d 481, 488 (Pa. Commw. Ct. 2020) ("declin[ing] to recognize" claims that RF emissions violated Due Process rights to bodily integrity). This claim fails on the first prong.

Moreover, Wolf fails to allege any plausible state action. Wolf's allegations do not meet the four-factor standard for the government nexus test where he merely alleges that T-Mobile (1) received a permit from the City to install and operate the cell site and (2) T-Mobile is considered a public utility by the California Public Utilities Commission. T-Mobile, even if it is considered a "public utility" by the California Public Utility Commission (FAC ¶¶ 59, 119), is still a private company and its actions do not constitute state action. T-Mobile's municipal permit to install a cell site on private property does not transform the company into a state actor for § 1983 purposes. This claim thus additionally fails on the second prong. Therefore, the § 1983 claim against T-Mobile is dismissed.

### 3. Claim 7 – Private nuisance

To state a claim for nuisance, plaintiff must show (1) an interference with his use and enjoyment of his property; (2) the interference is substantial; and (3) the interference is unreasonable. San Diego Gas & Elec. Co. v. Superior Ct., 13 Cal.4th 893, 937-39 (1996). In San Diego Gas & Elec. Co., California's high court affirmed that the interference posed by electromagnetic frequency emissions is determined by an objective standard without reference to the idiosyncrasies of the plaintiff. Id. at 938.

Here, Wolf relies heavily on the "Building Biology" standards that suggest RF emissions far exceeding a safe range, but that standard is not compared to the people

13

1  around him at Millbrae Heights.  Wolf fails to establish that the RF emissions are
2  objectively unreasonable.  To the contrary, the reports incorporated into the FAC
3  establish the ubiquity of RF sources (e.g., over 200 cell sites within a two-mile radius),
4  suggesting that reasonable persons generally do not find the cell site placement
5  unreasonable.  Wolf does not attempt to establish that a person of normal health and
6  sensibility would be substantially annoyed or disturbed by the RF emissions at issue, and
7  the FAC nowhere suggests that plaintiff's neighbors in the condominium complex suffer
8  even a degree of his same symptoms.  Wolf therefore cannot meet the necessary
9  objective standard to establish nuisance.  This claim is therefore dismissed.

### D. HOA & Individual Defendants' Motion

In the FAC, plaintiff advances the following causes of action against the HOA and individual defendants: (2) violation of the ADA, Title III; (3) violation of the FHA; (4) violation of FEHA; (5) violation of plaintiff's fundamental rights to self-defense, safety, personal security, and bodily integrity – 42 U.S.C. § 1983; California Constitution, Art. I, § 1; (7) private nuisance; (8) trespass; (9) constructive eviction; and (10) breach of fiduciary duties.  Within the opposition to the HOA and individual defendants' motion, plaintiff voluntarily dismisses the claims for (5) fundamental rights to self-defense, safety, personal security, and bodily integrity – 42 U.S.C. § 1983; California Constitution, Art. I, § 1 and (8) trespass.[2]  Dkt. 84 at 6 n.1.

The parties argue whether the individual defendants can be held liable for the actions they took in their roles as board members for the HOA.  The court does not reach the issue of individual immunity under California's "business judgment rule," California Civil Code section 5800, or California Code of Civil Procedure section 425.15, each of which protect directors for actions committed in the scope of their supervision of a corporate entity, because the court determines that each claim fails on the merits.  The

---

[2] Though Wolf lists voluntary dismissal of "Claim VI" in the brief opposing the HOA's motion to dismiss, that declaratory judgment claim was never asserted against the HOA and the individual defendants.

14

court notes, however, that the FAC fails to identify any independent conduct on the part of any individually named director, and the claims advanced against the individual defendants necessarily fail on that ground as well.

### 1. ADA Title III

Title III of the ADA promises "the full and equal enjoyment of the goods [and] services" of privately operated public accommodations, 48 U.S.C. § 12182(a). "Public accommodation" does not include residential apartment complexes. Indep. Hous. Servs. of San Francisco v. Fillmore Ctr. Assocs., 840 F.Supp. 1328, 1344 (N.D. Cal. 1993) ("[T]he legislative history of the ADA clarifies that "other place of lodging" does not include residential facilities.") (citations omitted); Arceneaux v. Marin Hous. Auth., No. 15-CV-00088-MEJ, 2015 WL 3396673, at 7 (N.D. Cal. May 26, 2015) ("[A]partment complexes do not constitute 'public accommodations' within the meaning of the ADA.") (collecting cases); Glasby v. Mercy Hous., Inc., No. 17-CV-02153-DMR, 2017 WL 4808634, at 5 (N.D. Cal. Oct. 25, 2017); Smith v. Powdrill, 2013 WL 5786586, at 11 (C.D. Cal. Oct. 28, 2013) ("[T]he ADA's reasonable accommodations requirement does not extend to residential housing."); McColm v. Anber, 2006 WL 3645308, at 5 (N.D. Cal. Dec. 12, 2006) ("residential portions of housing developments do not fall within the bounds of the ADA").

Here, though the FAC attempts to allege that the HOA is a private entity that "operates a place of public accommodation" within the meaning of the ADA, the FAC includes no factual support for this proposal. Title III's definition of "public accommodation" does not include residential apartment complexes. Wolf attempts to analogize the facts here to those in Johnson v. Laura Dawn Apartments, LLC, 2012 WL 33040, at *1 n.1 (E.D. Cal. 2012), a case that involved the provision of disabled parking spaces for the leasing office of an apartment complex—a place of public accommodation in contrast to the surrounding residential units. However, the circumstances here are distinguishable where a closed-off roof above a condominium is factually distinct from places open to the general public such as a leasing office and a disabled parking space.

15

The placement of the cell site in an otherwise inaccessible area of a residential complex does not transform the premises into a place of public accommodation. Title III does not apply to the HOA. Therefore, Wolf fails to state a cognizable claim for violation of Title III against the HOA, and this ADA claim is dismissed.

### 2. *Claims 3 & 4 – Federal Fair Housing Act & California Fair Employment and Housing Act*

The fair housing claims advanced against the HOA are somewhat different in scope than the ways the FHA and FEHA claims were alleged against the City and T-Mobile. Unlike the telecommunications company, the HOA is an entity clearly covered by the fair housing statutes because it is involved in the sale or rental of housing. But similar to the accommodation request to the City, plaintiff's accommodation request to the HOA was unreasonable.

The elements of a § 3604(f)(3)(B) claim are:

> (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation [in rules, policies, practices, or services] of the handicap may be necessary to afford the handicapped person an equal opportunity [i.e., equal to a non-handicapped person] to use and enjoy the dwelling; (4) that the accommodation [in rules, policies, practices, or services] is reasonable; and (5) that defendant refused to make the requested accommodation.

Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1179 (9th Cir. 2006). The third element is relevant here—"whether an accommodation in rules, policies, practices, or services was *necessary* to afford [plaintiff] an opportunity, equal to a non-disabled person, 'to use and enjoy'" his residence. Howard v. HMK Holdings, LLC, 988 F.3d 1185, 1190 (9th Cir. 2021) (emphasis added). "Without a causal link between defendants' policy and plaintiff's injury, there can be no obligation on the part of defendants to make a reasonable accommodation." U.S. v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1381 (9th Cir. 1997).

Here, plaintiff's own pleading shows a lack of causal link between his disability-

related injury and the requested accommodation. While Wolf seeks relocation of the cell site, the reports of his expert, incorporated into the FAC, observe several RF sources beyond the contested cell site. Among these sources of RF emissions are 126 cell towers and over 116 cell antennas within a two-mile radius of the residence, including a mobile cell antenna less than 0.03 miles away. FAC, Exhibit A at p. 4, ¶ 3. Wolf has not alleged facts to support the claim that if the cell site was removed, it would ameliorate the plethora of health woes he suffers as a result of his electromagnetic hypersensitivity. Plaintiff fails to allege that the requested accommodation was *necessary* to afford him the opportunity to use and enjoy his residence. He thus fails to plead a fair housing violation.

Plaintiff's fair housing claims against the HOA additionally fail along similar lines as the claims advanced against the City. Plaintiff fails to state a claim for denial of a reasonable accommodation where the requested accommodation would have required defendant to face liability in order to grant it. Here, any unilateral action by the HOA to restrict or relocate the cell site may have exposed the HOA to liability for violation of its lease with T-Mobile. Therefore, plaintiff fails to state a claim for violation of the FHA or FEHA against the HOA, and those claims are dismissed.

### 3.  Claim 7 – Private nuisance

As discussed above, the FAC fails to establish that the RF emissions are objectively unreasonable. See San Diego Gas & Elec. Co., 13 Cal.4th at 937-39. For the same reasons, this claim is dismissed as to the HOA and individual defendants.

### 4.  Claim 9 – Constructive eviction

All residential leases include an implied covenant of quiet enjoyment, which "may be breached in multiple ways." Ginsberg v. Gamson, 205 Cal.App.4th 873, 897 (2012). If a landlord's acts or omissions affect the tenant's use of the property and compel the tenant to vacate, there is a constructive eviction. Id. (citing Green v. Superior Court, 10 Cal.3d 616, 625, fn.10 (1974).

Here, Wolf fails to establish a landlord-tenant relationship that may give rise to a constructive eviction claim. Wolf owns his condominium. He does not enjoy a landlord-

17

1  tenant relationship with the HOA.  Where the HOA is a corporate entity involved in
2  preserving the common areas of his condominium complex, he fails to establish any
3  covenant of quiet enjoyment breached by the HOA.  This constructive eviction claim
4  therefore cannot stand and it is dismissed.

### 5. *Claim 10 – Breach of fiduciary duties*

The three elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary relationship, (2) breach of fiduciary duty, and (3) damages. Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 820 (2011).  The directors of a nonprofit mutual benefit corporation are fiduciaries who must act for the benefit of the corporation.  Frances T. v. Village Green Owners Assn., 42 Cal.3d 490, 513 (1986).

Here, Wolf fails to establish even the first element of the claim.  Wolf offers no authority to establish that the HOA or its directors owe him a fiduciary duty.  But further, Wolf fails to articulate which of the HOA's actions or omissions breached such a duty.  For these reasons, the claim for breach of fiduciary duty is dismissed.

## III. CONCLUSION

For the reasons stated above, the court **GRANTS** all three motions to dismiss. Amendment of many of the claims assessed above would prove futile, but the court grants leave to amend the following claims:

- Claim 6 – 42 U.S.C. § 1983, taking in violation of the Fifth Amendment, alleged against the City;
- Claim 7 – private nuisance, alleged against all defendants; and
- All claims except claim two (ADA, Title III), alleged against the HOA and individual defendants.

Plaintiff may file a second amended complaint within 30 days of the date of this order that amends only these claims; the others are dismissed with prejudice.  No additional parties or claims may be added without leave of court or stipulation of defendants.

**IT IS SO ORDERED.**

Dated: August 23, 2021

/s/ *Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge